## ALDINE TRUST CO. v. SMITH.

(Circuit Court of Appeals, Third Circuit. November 10, 1910.)

No. 1,358.

BANKRUPTCY (§ 155*)—PROPERTY PASSING TO TRUSTEE—ESTOPPEL.

A bankrupt corporation, which had contracted as subcontractor to furnish and set tile in certain buildings under construction and had delivered the tile at the buildings, borrowed money from a trust company, and as collateral security assigned the money "due for material furnished" from the contractors. It also represented in good faith that the tile had been delivered to the contractors and that the money therefor was due it. Before the tile had been set, it became bankrupt, and its trustee claimed the tile, which were then sold to the contractors by agreement of the parties. *Held* that, having obtained the loans on the representation that the tile had been sold, both the bankrupt and its trustee who took in its right were estopped in equity as against the trust company to claim the title or their proceeds.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 155.*]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

In the matter of the A. P. Wilson Company, bankrupt. From an order of the District Court denying its claim to certain money (In re A. P. Wilson & Co., 176 Fed. 652), the Aldine Trust Company appeals. Reversed.

A. G. Dickson (Dickson, Beitler & McCouch, of counsel), for appellant.

John J. Foulkrod, Jr. (Porter, Foulkrod & McCullagh, of counsel), for appellee.

Before BUFFINGTON and LANNING, Circuit Judges, and CROSS, District Judge.

CROSS, District Judge. The A. P. Wilson Company, workers in tile, had, some time prior to the institution of bankruptcy proceedings against it, agreed as subcontractors to furnish and set tile for three separate buildings located in the city of Philadelphia, which were then in the course of construction, and had delivered tile to each of the buildings. Having entered into these contracts, and delivered the necessary tile therefor, it borrowed money from the Aldine Trust Company, giving its notes therefor, and as collateral security for their payment executed to it three several assignments of the following form:

"For value received we hereby sell, assign, transfer and set over unto the Aldine Trust Co., all our right, title and interest in the sum of six hundred dollars ($600.00) due for material furnished to operation of Elder & Owen at Fifty-Seventh and Walnut streets."

The assignments differ merely in the amount named therein and the building from which such amount was alleged to be due for material furnished. At the time the several assignments were made, the A. P. Wilson Company had, as stated, delivered to each of the three buildings the necessary tile for the completion of its work. In this situa-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion the A. P. Wilson Company applied to the Aldine Trust Company for loans, and in the case of each loan, and at the time it was made, executed an assignment, in the foregoing form, of moneys due for materials furnished to the respective buildings. The assignments not only stated that the moneys were then due, but similar oral representations were clearly and indisputably made by the officers of the A. P. Wilson Company to an officer of the trust company, when the loans were procured, and it was upon the faith of the assignments and of the representations thus made that the moneys were loaned. After the delivery of the tile and the procurement of the loans, but before the work had been begun by the Wilson Company, it went into bankruptcy. Smith, its trustee in bankruptcy, and the appellee here, claimed that the tile belonged to the bankrupt at the time the bankruptcy proceedings were begun. The trust company, on the other hand, claimed that it was entitled to the proceeds of the tile to the extent that their value had been assigned to it. Under an agreement with the trustee in bankruptcy, the Aldine Trust Company sold the tile to the contractors for $1,540, and the question in controversy is: To which of the parties does that fund belong? The referee held that the Aldine Trust Company had no title to or lien upon the tile, and that it must pay to the trustee, not the entire sum of $1,540, but the sum of $499.75, which is the difference between $1,540 and $1,040.25, which it is conceded the trust company is entitled to retain on account of other transactions which need not be particularly set forth. The absolute good faith of the Aldine Trust Company in making the loans in question is put beyond controversy, both by the testimony of its own officers and by those of the bankrupt. It also appears in the case, and is undisputed, that the execution of the several assignments were duly authorized by the A. P. Wilson Company. The referee and the learned judge of the District Court base their decision in substance upon the proposition that the trust company had no title to or lien upon the tile itself, and they accordingly held that the trustee had the superior right to the proceeds arising from the sale thereof. But that proposition does not correctly state or answer the position of the trust company, as will appear from the following extract taken from the brief of its counsel:

"The trust company has never contended, and does not now contend, that it had a possessory lien on the tile by virtue of delivery thereof to it, but does claim that there was an assignment to it of moneys which the bankrupts had alleged were due by the contractors for the tile that had been delivered at the several operations, and it is submitted that the trustee in bankruptcy ought not to be allowed, any more than the bankrupts themselves, to allege that no sale of the tile had been made by the bankrupts to the several contractors, and that there was no money due by the said contractors for the tile."

When the loans were made, and in the endeavor to procure them, the A. P. Wilson Company took the position and asserted in effect that the title of the tile had already passed to the builders, and that certain specific sums were due to it therefor. The language of the assignments, coupled with the other testimony in the case, will not permit of any other conclusion. To permit the trustee of the A. P. Wilson

Company to reclaim these tile, or, what amounts to the same thing, to claim the proceeds of their sale, would unquestionably work a fraud upon the trust company which loaned moneys, not upon the security of the tile or upon any pledge thereof, but upon the faith of statements made to it by the officers of the bankrupt, to the effect that it had no title thereto, but had parted with the same to the contractors, and that moneys, representing the price thereof, were due to it therefor, which moneys it was willing to assign to the trust company as collateral security for the repayment of such loans. The tile were intended for and were delivered to certain buildings, and in view thereof, and of the assignments and of all the circumstances under which the loans were made, it seems essentially right and proper that the trustee in bankruptcy, standing in the shoes of the bankrupt, should be held to be estopped from denying what it then asserted, and claiming the proceeds of the sale thereof. It would be difficult to suggest a clearer case of estoppel. To claim the value of the tile, the bankrupt corporation, were it the actor in this proceeding, would have to admit that its assignments, although duly authorized, were a fraud; that material statements contained therein were untrue; that its officers prevaricated when they said that moneys were due for the tile; that it thereby deceived and lulled to sleep the officers of the trust company, and fraudulently procured the loans in question; but that, notwithstanding all this, it should now be permitted to tell the truth and take the tile. Certainly no court of equity would assist the bankrupt under such circumstances. Having treated the tile as sold and the proceeds thereof as due, and having assigned the same as collateral security to the loans, neither it nor its trustee will now be heard to assert the contrary.

Out of a multitude of cases which might be cited as establishing the above principle, that of Fourth Street Bank v. Yardley, 165 U. S. 634, 17 Sup. Ct. 439, 41 L. Ed. 855, only will be referred to, wherein, at page 653 of 165 U. S., at page 443 of 17 Sup. Ct. (41 L. Ed. 855), Mr. Justice White says:

"As the Fourth Street Bank contracted and parted with its money on the faith of the representations of the Keystone Bank that there was to its credit, in the Tradesmen's Bank, a specific sum, and the fund which came into the hands of its voluntary assignee is the fund as to which the representations were made, the Keystone Bank and its assignee are in equity estopped from asserting, to the prejudice of the Fourth Street Bank, that the character and condition of the fund was otherwise than it was represented to be."

The trust company is entitled to receive the moneys in controversy. The decree below is reversed, with costs.